(96 App. Div. 344.)

HOPEDALE ELECTRIC CO. v. ELECTRIC STORAGE BATTERY CO.

(Supreme Court, Appellate Division, First Department.   July 13, 1904.)

1. CONTRACTS—CONSTRUCTION—AGREEMENT TO MAKE COMPETITIVE TEST—EXPENSE.

Defendant purchased plaintiff's electric car plant, paying a certain amount, and agreeing that if, upon a test, plaintiff's electric storage battery system should prove superior to that of defendant, it would pay a certain additional sum, and also agreeing that it would proceed forthwith to institute the test.   Held, that defendant was required to pay the expense of the test, and its refusal to institute the test unless plaintiff would pay the expense thereof was a breach of the contract.

2. SAME—SUBSEQUENT AGREEMENT—EVIDENCE.

In an action for breach of a contract by defendant to make a competitive test, under terms to be agreed upon, of its storage battery system with that purchased from plaintiff, to determine the price to be paid for plaintiff's system, evidence held to justify submission to the jury of the issue as to whether the parties, after execution of the contract, made a further agreement as to the terms and conditions of the test.

3. SAME.

Where the contract by which defendant purchased plaintiff's electric storage battery system provided that defendant should institute, under terms to be determined later, a competitive test of the merits of the system purchased with that of the system already owned by plaintiff, to determine the price to be paid for the system purchased, the agreement to make the competitive test, though regarded as a mere agreement to subsequently agree upon the terms of the test, was nevertheless enforceable, after the making of a new agreement, as to those terms.

4. SAME—MEASURE OF DAMAGES.

Defendant purchased plaintiff's electric car plant under a contract providing for the immediate payment of a certain sum, and that defendant should institute a competitive test of the storage battery systems of plaintiff and of defendant, and that if plaintiff's system equaled defendant's the defendant should pay $100,000 more, and should pay $150,000 more if plaintiff's system was 5 per cent. better than defendant's, $300,000 more if it was 10 per cent. better, and $500,000 more if it was 20 per cent. better. Defendant violated the contract by refusing to make the test.   Held, that the measure of plaintiff's damage was, not the maximum amount which might have been paid if the test had been made, but such sum as the proof might show plaintiff's rights under the contract to be worth.

5. SAME—ABSENCE OF PROOF—NOMINAL DAMAGE.

In the absence of any proof that plaintiff's system was equal or superior to that of defendant, plaintiff was entitled only to nominal damage for the breach.

6. SAME—APPEAL—HARMLESS ERROR.

Where, in an action for breach of contract, plaintiff is entitled to nominal damages only, a judgment dismissing the complaint will not be reversed.

Action by the Hopedale Electric Company against the Electric Storage Battery Company.   Defendant had judgment, and plaintiff's motion for a new trial on exceptions was ordered to be heard in the first instance before the Appellate Division.   Motion denied.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Austen G. Fox, for plaintiff.
William H. Page, Jr., for defendant.

HATCH, J. This action is brought to determine a difference arising between foreign corporations. The plaintiff is organized under the laws of the state of West Virginia, and the defendant is organized under the laws of the state of New Jersey and doing business in this state. ·Upon the 19th day of September, 1895, these two corporations entered into a written agreement, whereby the plaintiff agreed to sell and the defendant to purchase certain letters patent, and also all the lands and buildings belonging to the plaintiff, situate at Milford, in the state of Massachusetts, together with the cars, tools, machinery, and other personal property therein. The purchase price for such property was the sum of $150,000, payable in installments upon and after the delivery of the property. The contract in this respect has been fully complied with by both parties thereto, the plaintiff by delivery and the defendant by payment. It was further provided in the agreement between the parties as follows:

"And, whereas, the said Hopedale Electric Company claims that the system of storage battery cars as operated by it at Milford is equal to and superior to the system controlled by and proposed to be operated by the Electric Storage Battery Company, and the said Electric Storage Battery Company agrees that if, upon a competitive test of the two systems, that of the Hopedale Electric Company is equal to that of the Electric Storage Battery Company, it will pay to the Hopedale Electric Company a further sum of· one hundred thousand ($100,000) dollars; if five per cent. superior, the sum of one hundred and fifty thousand ($150,000) dollars; if ten per cent. superior, the sum of three hundred thousand ($300,000) dollars; if twenty per cent. superior, the sum of five hundred thousand ($500,000) dollars. The Electric Storage Battery Company agrees that it will proceed forthwith to institute this competitive test. The cars and batteries shall be operated under the system of the Hopedale Electric Company shall be prepared by and be operated under the management and control of agents selected or approved by it. The conditions of the test, such as time, place, track, length of operation, number of cars to be used, etc., under which the test shall be made, shall be agreed upon by both parties as soon as may be after the execution of this instrument; it being understood that the test of superiority shall be determined by the durability, efficiency, economy, speed, and reliability of service."

It was admitted that the test provided for had never been made, and the proof shows that the defendant refused to make it, unless the plaintiff would assume and pay the expenses attendant thereon. After the refusal to make the test upon the part of the defendant, the plaintiff brought this action, setting up the breach of the contract in this respect, and claiming to recover the maximum amount agreed to be paid by the plaintiff in the event that the plaintiff's system proved to be, upon test, 20 per cent. superior to that of the defendant, and judgment was demanded for the sum of $500,000. To this complaint the defendant demurred. The court at Special Term overruled the demurrer, but upon appeal to this court the judgment was reversed and the demurrer sustained; the court holding that the remedy of the plaintiff was by action to recover damages for the breach of the vendee's contract to make the test (Hopedale El. Co. v. Storage Battery Co., 39 App. Div. 451, 57 N. Y. Supp. 422), and that the action could not be maintained as for money due and payable by the terms of the contract. Leave having been given to amend the complaint, the plaintiff availed itself of the privilege by averring that it was damaged on account of the breach of the contract in the sum of

$500,000. A trial was had, and at the close of the plaintiff's case a motion was made by the defendant to dismiss the complaint. The motion was granted, to which the plaintiff took an exception; and thereupon the court ordered plaintiff's exceptions to be heard in the first instance at the Appellate Division.

In express terms the defendant undertook to proceed forthwith to institute a competitive test. This undertaking imposed upon it the burden of making such test at its expense. As it had assumed this obligation, it was bound to fulfill it and to take such means and furnish such appliances as were necessary for the purpose. The expense attendant upon it was an incident to the fulfillment of the obligation and was within the terms of what the defendant undertook to do. It was, therefore, not justified in refusing to make the test, based upon the theory that it was unwilling to do so, or founded upon the fact that it had made a bad bargain.

This provision of the contract, however, while absolute in terms was, nevertheless, dependent upon a condition subsequent provided for in the contract as follows:

"The conditions of the test, such as time, place, track, length of operation, number of cars to be used, etc., under which the test shall be made, shall be agreed upon by both parties as soon as may be after the execution of this instrument."

It is claimed by the defendant that this provision of the contract did not constitute a binding agreement, which could be enforced, inasmuch as it in terms provided for a subsequent agreement, and therefore did not impose a binding obligation upon the parties. In this construction of the contract the defendant is supported by authority. Mayor v. McCreery, 119 N. Y. 434, 23 N. E. 1045; United Press v. N. Y. Press Co., 164 N. Y. 406, 58 N. E. 527. Assuming, therefore, that this clause of the contract was a mere agreement to subsequently agree, and was not binding nor otherwise enforceable unless the minds of the parties met by a new agreement as to its terms, and that the obligation to test was dependent thereon, yet it was competent for the parties either orally or in writing to agree upon the condition contemplated by it and thus fulfill its terms. Such subsequent agreement, if made either orally or in writing, would enable the plaintiff to insist upon its fulfillment and impose upon the defendant the burden of proceeding with the test at its expense. The evidence given upon the trial tended to establish that at the time of the execution and delivery of the contract of purchase and sale the parties did in fact enter into a further agreement in fulfillment of this provision of the contract. It is undisputed that the parties negotiated respecting the employment by the defendant of Stevens, an electrician then connected with the plaintiff company. The president of the plaintiff consented to such employment upon the understanding that, when the test should take place, Stevens was to represent the plaintiff in making it, and this was assented to by the president of the defendant, who thereupon employed and directed him to prepare two cars for the proposed test. The evidence further tended to establish that these were the number of cars agreed to be used in making the test, and that the time and place were left to the president

of the defendant. The president of the defendant at this negotiation remarked that he did not know but that he would have Stevens also represent them when the test should be made. Upon this evidence and the other circumstances in the case, we think that it would have been competent for the jury to find that the minds of the parties substantially met upon this question. There was certainly the agreement as to the number of cars to be used. The direction was to get them in readiness for making it, and the time and place were to be named by the president of the defendant, and Stevens was selected to represent the plaintiff. These things were the substantial elements for which the contract provided in this respect. As the defendant had undertaken to name the time and place where the test should be made, and the plaintiff had assented to it, it was bound to proceed and name such time and place within a reasonable period thereafter. It could not arbitrarily refuse to discharge this obligation, and, had the cars been prepared and the time and place named, substantial compliance would have been had with this part of the contract. After this negotiation and agreement the plaintiff from time to time demanded fulfillment of the terms agreed upon, and considerable correspondence passed between the parties. It resulted finally in the president of the defendant writing a letter declining to make the test unless the plaintiff would assume the burden of the expense in making it, and, if so, it offered to join with the plaintiff in procuring the test to be made. The ground upon which this refusal proceeded was clearly stated to be that the defendant had made a bad bargain in the purchase, and did not wish to incur any further expense. We think this letter must be regarded as a distinct breach of the contract in this respect. At least, a jury would be authorized so to find from all the facts and circumstances presented by the plaintiff's proof.

The evidence being sufficient, therefore, to establish a breach of the contract, we are called upon to consider what were the rights of the parties under the contract; and this can be easily determined when the rule by which the plaintiff's damage is to be admeasured is arrived at. The plaintiff claims that, the breach having been established, the measure of its damage is the maximum amount secured to be paid by the terms of the contract. In reaching this conclusion it is asserted that such sum was the purchase price of the property dependent upon the test, and, as the defendant was at fault in not making it, such sum became due and payable the moment of the breach. Manifestly such rule cannot obtain. This is not a case where the purchase price furnishes the measure of damages, as was the rule announced in Waters Heater Co. v. Mansfield, 48 Vt. 378, and Thomson-Houston El. Co. v. Brush-Swan Electric L. & P. Co. (C. C.) 31 Fed. 535. Therein the sale of the article was for a given sum, conditioned, however, upon the purchaser's approval after a test, to be made by him. The goods were delivered, but the test was never made, and the articles were retained. The court held that under such circumstances the defendant was liable for the purchase price of the article. This is clearly so upon principle. The sale was conditional, and the vendee had the right to take and pay for the goods and de-

cline to make the test.  The rights of the parties were not dependent upon the test, except that the vendee might, if he made it, secure the right to disaffirm the purchase.  When it was not made, he must be regarded as having waived his rights in that respect, and, having retained the goods, he became liable for the purchase price as upon an ordinary sale without any condition whatever.  As the right to make the test was personal to himself, the vendee was bound to make it, and could not shelter himself behind the fact that others had made a test and were dissatisfied with the results.  No such element entered into the contract.  When the test was not made, the case was stripped of every feature which differentiated it from the ordinary obligation imposed when the relation of vendor and vendee of property exists. The present case is entirely different and scarcely bears resemblance to such transaction.  Here the purchase price of this property was $150,000, the property was delivered, and the purchase price paid. Dependent thereafter upon results, the production of which was to be agreed upon between the parties, a further sum or sums was stipulated to be paid upon a contingency.  The production of these results was entirely independent of the purchase and sale, save so far as such act produced the agreement by which further sums of money might be obtained, dependent upon conditions quite independent of the purchase price.  It is evident, therefore, that the sums of money to be paid if certain results were produced cannot be regarded as a part of the purchase price of the property.  The right to further compensation depended upon the existence of conditions to be thereafter ascertained.  If those conditions did not exist in given degree, the plaintiff could receive nothing; but such fact did not destroy the contract of purchase and sale, nor did it have the slightest effect upon the title to the property.  That had passed and been paid for.  The rule of damages in such case is not the purchase price of the property, but one which measures the value of the contract to the plaintiff.  This is arrived at by a determination of what it was worth to it.  It is unnecessary, however, that we reason the question upon principle, for the rule has been announced.  Upon the former appeal it was stated by the Presiding Justice, who wrote for this court:

"If the defendant refused to make the test in order to ascertain the degree of superiority, if any existed, the plaintiff would have a right to recover damages because of that breach of the defendant's undertaking in the contract; and whatever damages the plaintiff might have sustained by reason of such undertaking upon the part of the defendant to make this test the plaintiff would be entitled to recover, not as money falling due by the terms of the contract, but as damages sustained by reason of the defendant's breach of the contract."

It was necessarily determined upon that appeal that the plaintiff could not recover a sum of money based upon the theory that it was a part of the purchase price, and certainly it can no more recover the particular sum by calling it damages for a breach.  The sums mentioned therein were in no sense liquidated damages which follow upon the establishment of a breach.  They were damages, which might or might not be recovered, dependent upon proof showing the value of the plaintiff's system.  Indeed, the plaintiff is not limited to the sums, or any of them, secured to be paid dependent upon given results; but,

there having been a breach of the contract, as it is entitled to the value of it, it may recover as such damages such value, whether it be more or less than that stipulated to be paid in the contract. This case is closely related to that of Humaston v. Telegraph Co., 20 Wall. 20, 22 L. Ed. 279. Therein Mr. Justice Davis, speaking for the court, said:

"The action can be supported for the value of the property, and this was the proper subject of inquiry at the trial. The company covenanted to pay this value, to be ascertained in a particular mode; and, as they have prevented this mode being adopted, they cannot take advantage of their own wrong and deprive the plaintiff of the opportunity of showing to the court and jury what it is. In lieu of the award of the arbitrators, the verdict of the jury can be asked by the plaintiff to determine it. The ascertainment of this value was the essence of the contract, the thing on which the submission was based, and the revocation of the submission leaves the jury to settle it. Benjamin, in his treatise on Sales, says, if the performance of the condition for a valuation be rendered impossible by the act of the vendee, the price of the thing sold must be fixed by the jury on a quantum valebat, as in Clark v. Westrope, 18 C. B. 765, where the outgoing tenant sold the straw on a farm to the incomer, at a valuation to be made by two indifferent persons, but, pending the valuation, the buyer consumed the straw; and the doctrine of the text is sustained by the adjudged cases in this country and England."

There is no difference in principle between these cases, so far as they relate to the rule of damages. Such rule in each case is the value of the contract. That is not measured by the sums stipulated to be paid under given contingencies, but is dependent upon proof showing what the value of the contract was; and its value measures the damage sustained. Upon the plaintiff, therefore, devolved the burden of proving that conditions existed which entitled it, by virtue of the terms of the contract, to receive money in addition to that which had been received from the defendant as the purchase price. Unless it appears that its invention was equal to, or superior to, that of the defendant's, there is no provision in this contract which entitled it to receive anything beyond that which was paid. If it was otherwise damaged by reason of the breach, it must show by proof wherein and how; and if, upon proof, this be established, the sum in which it was damaged may be awarded. There is a presumption of damage arising from the breach of a contract, but such presumption does not go to the extent of measuring the loss. In the absence of proof, it is regarded as nominal. If a further sum is demanded, proof must be given showing that the party has suffered loss. In the present case there is no proof whatever to show that the plaintiff has suffered anything beyond nominal damages, which are to be presumed. For aught that appears the plaintiff received full value for all the property and rights which it transferred, and, in the absence of proof that they are sustained, no substantial damages can be awarded.

The complaint in the present case was dismissed. Doubtless its dismissal was technical error; but as the plaintiff offered no proof in support of its claim for damage, but stands squarely upon the terms of its contract, and makes no claim that it can show any substantial damage by proof, this court will not reverse simply that there may be a recovery of nominal damages, where no other question or rights are involved therein (Thomson-Houston E. Co. v. Durant L. I. Co., 144 N. Y. 34, 39 N. E. 7).

It follows, therefore, that the exceptions should be overruled, and the motion for a new trial denied, with costs. All concur; LAUGHLIN, J., in result.