CHARLES MOSER and ISIDOR DOKSON, Respondents, *v*. YORK CLOAK & SUIT CO., INC., Appellant.

(Supreme Court, Appellate Term, First Department, June, 1920.)

**Actions — what does not state a cause of — parties — pleading — options — contracts.**

A so-called agreement which is dependent upon a further prospective and hoped for agreement between the parties is not a binding obligation upon either of them.

A complaint alleging that by the terms of the so-called agreement the defendant had the option to offer to plaintiffs certain shares of defendant's stock and to combine the plaintiff's fac-

tory with the business of the defendant, making proper provision for the preservation of plaintiffs' stock, together with a reasonable drawing account, and that it was further provided that in the event that plaintiffs desired to purchase and defendant would not agree to sell upon conditions stated, defendant agreed to pay plaintiffs $1,000, etc., does not state a cause of action, there being no express agreement on the part of the defendant to endeavor to reach any agreement with plaintiffs as to the terms of the combination of their respective businesses.

APPEAL by defendant from a judgment of the City Court of the city of New York, in favor of plaintiffs, entered upon the verdict of a jury.

Max Zaliels (Lewis F. Glaser, of counsel), for appellant.

Reginald F. Isaacs (Henry W. Unger, of counsel), for respondents.

BIJUR, J. This suit is brought upon three causes of action. Upon the first for $368, defendant conceded plaintiffs' right to recover. The second for $632 was for defendant's breach in certain respects of a contract to be presently mentioned as to which it is quite evident, as recognized by both parties, that the jury found in defendant's favor. It is, therefore, not involved in the present appeal. The third cause of action was for the sum of $1,000, sought to be recovered under the following circumstances:

On July 10th, 1919, the respective parties hereto entered into a contract in which the defendant is described as the party of the first part and the plaintiffs as the party of the second part, whereunder it was recited that the defendant was engaged in the manufacture of clothing; that the plaintiffs were the

Appellate Term, First Department, June, 1920.    [Vol. 112.

owners and operators of a factory; and that the defendant employed the plaintiffs to take charge of such factory for the period, July 15 to November 15, 1919. The defendant agreed to furnish the factory with all materials necessary and to discharge all its expenses with the intent that the defendant should become for the period named practically the owner and operator of the factory. For all this the defendant agreed to pay the plaintiffs $100 each per week for their services and $1 on each garment produced in the factory.

Other details were provided for, and then followed the clause which is the subject of the present appeal (for the purpose of clarity I have substituted the word "defendant" for "party of the first part" and "plaintiffs" for the "party of the second part"): "It is further understood and agreed by and between the parties hereto, that at the end or termination of this agreement the (defendant) may offer to the (plaintiffs) certain shares of the capital stock of the York Cloak & Suit Co. Inc. with the intention of combining the factory herein specified and the services of the (plaintiffs) into said York Cloak & Suit Co. Inc. and in that event proper provision shall be made for the said (plaintiffs) for the preservation of their said shares of stock together with a reasonable drawing account. In the event that the (plaintiffs) shall desire to purchase said shares and the (defendant) will not agree to sell the same then and in that event the said (defendant) will pay to the (plaintiffs) at the termination of this agreement the sum of One Thousand ($1000) dollars as a bonus for the use and occupation of the said factory of the (plaintiffs)."

The complaint alleges as a third cause of action that by the terms of this agreement: "The defendant *had the option* to offer to plaintiffs certain shares of defend-

ant's stock and to combine the plaintiffs' factory with the business of the defendant making proper provision for the preservation of plaintiffs' stock together with a reasonable drawing account," and that it was further provided that " in the event that the plaintiffs desired to purchase and defendant would not agree to sell upon the conditions stated, defendant agreed to pay the plaintiffs One thousand ($1000) dollars, etc.;" that the defendant " failed, neglected and refused at the end of the termination of said agreement to sell or agree to sell to said plaintiffs said stock and combine the plaintiffs' factory with defendant's business and make proper provision for the plaintiffs' stock, together with a reasonable drawing account;" that plaintiffs duly demanded of defendant the fulfillment of said conditions and were at all times ready and willing to perform their part of the agreement, but that defendant failed to carry same out or to pay the sum of $1,000 as agreed.

In my opinion the allegations under the statement of the third cause of action fail to set forth a cause of action, and the complaint as to said cause of action should have been dismissed at the opening had a motion been made for that relief. It was, however, made at the close of the plaintiffs' case and of the entire case on the express ground that the complaint " does not state facts sufficient to constitute a cause of action, and particularly on the ground no price is mentioned, and no criterion of value by which the value of the stock can be appraised." It is evident to my mind that the clause of the agreement which I have quoted was not even intended to bind the defendant to do anything, and the complaint recognizes that situation by alleging in terms that the defendant had " the option " to make the offer therein provided for. It requires no argument to demonstrate that the

Appellate Term, First Department, June, 1920.    [Vol. 112.

defendant could not be mulcted in damages for failure to exercise an option. The payment of $1,000 by the defendant is stipulated to be made not in the event that defendant fails to exercise the option, but fails to sell the stock; provided that the parties do agree and after they have agreed upon the terms of such sale.

Even if we assume, which I do not think we can, that it was agreed that at the end or termination of this agreement the party of the first part shall *offer*, in place of *may* offer (as the contract recites) shares of the defendant to the plaintiffs, the situation would not be bettered in plaintiffs' favor. The agreement so-called would still remain an agreement dependent upon a further prospective and hoped for agreement and there would not be a binding obligation upon the parties. *Mayer* v. *McCreery,* 119 N. Y. 434; *United Press Co.* v. *New York Press Co.,* 164 id. 406; *Petze* v. *Morse Dry Dock & Repair Co.,* 125 App. Div. 267.

There is no stipulation fixing, nor any means provided for ascertaining, the price of plaintiffs' factory. There is an equal absence of provision for determining the value of defendant's shares. I cannot understand what the parties meant by the stipulation that " proper provision shall be made for the preservation of the plaintiffs' shares of stock " (to be issued by the defendant), nor is any standard provided whereby it can be determined what the parties meant by " a reasonable drawing account " for the plaintiffs. Even if we interpret the phrase " proper provision for the preservation " of plaintiffs' shares of stock as indicating a plan to provide for the protection of a possible minority interest in the defendant corporation, a half dozen methods of doing that suggest themselves forthwith, and there are, of course, innumerable others.

Plaintiffs' counsel urges in his brief on this appeal that " every contract implies good faith and fair dealing between the parties to it," citing *Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 273, 277. This principle undoubtedly is sound as applied either to the interpretation of a contract or its execution, but where the parties have made no contract — in other words, where their minds have not met — it is difficult to understand to what act on the part of either party the quality of good faith or fair dealing is to attach. Defendant did not even agree to endeavor to reach an agreement with plaintiffs as to the terms of the contemplated combination of the two businesses. That element, at least, was present in *Hopedale Electric Co.* v. *Electric Storage Battery Co.*, 39 App. Div. 451; 96 id. 344; affd., 184 N. Y. 356; 132 App. Div. 348; affd., 198 N. Y. 588. In that case the plaintiff had sold its plant to defendant for a certain sum and the contract of sale provided for additional payments to be made in the event that a subsequent test of the respective merits of the two plants should show certain percentages of superiority of plaintiff's over the defendant's. The contract further provided that " the conditions of the test * * * shall be agreed upon by both parties as soon as may be after the execution of this agreement." A demurrer to the first complaint served was sustained on the ground that the contract was too indefinite to support a cause of action and the court pointed out that in the absence of appropriate allegations as to the degree of superiority of one system over the other no cause of action was set forth, that indeed, the only breach indicated was one of defendant's " agreement to agree " upon the conditions of a test, for which the damages would manifestly be merely nominal. 96 App. Div. 352, 353. A recovery was,

however, ultimately sustained in the final stage of the case (reported in 132 App. Div. 348) after plaintiff had given proof that the conditions of the test had in fact been agreed upon but that defendant had arbitrarily refused to proceed with such test. It was then held that the jury had a right to weigh the evidence as to the relative merits of plaintiff's system over defendant's.

In the instant case, as I have said, we have no express agreement on the part of defendant to endeavor to reach any agreement with the plaintiffs as to the terms of the combination of their respective businesses. But even if we assume that that should be implied in the agreement as made, there is a complete absence of any standard, measure or basis for determining, ascertaining, or I might possibly add, guessing at the prices, terms of payment, methods of protection or reasonableness of the amount of compensation contemplated.

In my opinion, therefore, the clause of the contract quoted, and which is made the basis of the third cause of action represents no meeting of the minds of the parties and is so totally indefinite as to afford no basis for any recovery on any theory.

The complaint, therefore, should have been dismissed as to this cause of action. The judgment, consequently, must be modified by reducing the same to $368 and costs in the court below, that being the sum admittedly due from defendant to plaintiffs on the first cause of action, and as so modified, affirmed with costs to the appellant of this appeal to be set off against the judgment.

Delehanty and Wagner, JJ., concur.

Judgment modified, and as so modified affirmed, with costs.