(94 App. Div. 404.)

### HORTON et al. v. HALL & CLARK MFG. CO.

(Supreme Court, Appellate Division, First Department.   May 13, 1904.)

1. CONTRACTS—CONSTRUCTION—TERM—BREACH.

Plaintiffs, commission merchants, had represented defendant in the sale of cotton wadding during one year, and at the beginning of the next year were offered the business for that year on the same terms as for the first year, and were told that defendant would not sell out, and that after the 1st of August of that year they should have, in addition to the business that they had already had, the sale of carriage wadding also manufactured by defendant. *Held*, that there was an implied agreement on the part of defendant to continue the manufacture of wadding throughout the year, although there was no agreement that any particular quantity should be manufactured, and in suspending manufacture and selling its business defendant was guilty of a breach of the contract.

2. SAME—BREACH—DAMAGES—PROBABLE PROFITS—EVIDENCE—SUFFICIENCY.

In an action for breach of a contract whereby plaintiffs were to represent defendant in the sale, on commission, of cotton wadding during a year on the same terms that they had represented it the previous year, testimony warranting the inference that if defendant had continued manufacture during the year it would have manufactured as much or more than it did in the previous year, and that plaintiffs would have been able to sell at least that much, was sufficient, as evidence of probable profits which would have been realized by plaintiffs if defendant had fulfilled its contract, to afford a basis for the assessment of damages.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Charles E. Horton and another against the Hall & Clark Manufacturing Company. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

George H. Fletcher, for appellant.
Scott McLanahan, for respondents.

LAUGHLIN, J.   The plaintiffs have recovered a verdict for a breach of contract by which they claim that the defendant became obligated to continue the business of manufacturing cotton wadding throughout the year 1900, and to permit them to sell the product on a commission of 5 per cent. on all sales made by them.   The defendant continued to manufacture and the plaintiffs continued to sell the goods until the 20th day of July, 1900, when the defendant notified the plaintiffs that it had sold its business to the Union Wadding Company; and it thereupon ceased manufacturing, except that it continued to manufacture carriage wadding until August 1st, in fulfillment of an existing contract with other parties.   The case was submitted to the jury upon the theory that the suspension of manufacture constituted a violation of the contract, and the jury were permitted to assess as damages the probable profits that the plaintiffs would have made had the defendant continued to manufacture in good faith throughout the year 1900.   The defendant claims that the contract was not sufficiently definite to obligate it to manufacture any particular quantity, or continue manufacturing, or

to prevent the transfer of its business, and that, even if it be guilty of a breach of the contract, only nominal damages are recoverable.

The plaintiffs were commission agents engaged in selling cotton and woolen goods in the city of New York. Shortly prior to the 1st day of January, 1899, the president of the defendant applied to the plaintiffs to become its agents in selling cotton wadding, which it was about to manufacture. There existed at this time a cotton wadding trust known as the Union Wadding Company. The plaintiffs evidently surmised that the defendant might be engaging in this line of business for the purpose of selling out to the trust, and they accordingly asked whether this was "a knock at the trust," to which the president of the defendant replied, in substance, that it was not; that the business was profitable, and they were taking it up for the purpose of making money on the manufacture and sale of the goods. The plaintiffs were offered a commission of 5 per cent., and informed that they would have the sale of all the wadding manufactured by the defendant, except wadding for the carriage trade, concerning which they were already under a contract with other parties, as stated. The plaintiffs agreed to take the business for the year 1899. The business was continued on these terms during the year 1900, during which time the plaintiffs were energetic in introducing the defendant's wadding to the trade and obtaining customers therefor. The sales during the year 1899 aggregated $10,211.81, all of which, except $96, was during the last half of the year, which was the season in which the demand was greatest. The plaintiffs gave evidence tending to show, and sufficient to warrant the jury in finding, that on the 2d day of January, 1900, the president of the defendant called upon them, expressed satisfaction with the way they had handled the business during the previous year, stated that they should have the business for the year 1900 on the same terms as for the first year, and that as soon as the existing contract for the sale of carriage wadding expired, which would be on the 1st day of August, they should have that business also, which he represented amounted to $30,000 during the previous year; that the question concerning the defendant's selling out to the trust arose again at this time, and the president of the defendant stated that "they would not sell out"; and that plaintiffs accepted this proposition on the express condition that they should have the carriage wadding business as offered.

Assuming that both parties acted in good faith in entering into this contract, it is evident that it was intended to continue for a year, and that the defendant should continue business, and that the plaintiffs should continue to represent it as in the past. Moreover, the plaintiffs accepted the employment upon condition that they should have the sale of the carriage wadding after August 1st, and defendant sold out and discontinued the manufacture prior to that time, except to fulfill the existing contract, as already stated. We think it clear that in making this contract there was an implied agreement on the part of the defendant to continue manufacturing throughout the year, and that in suspending manufacture and transferring its business it was guilty of a breach of the contract. Sterling v. Maitland, 5 Best & Smith, 840; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Booth v. Cleveland Rolling Mill, 74 N. Y. 15; Jaquin v. Boutard, 89

Hun, 437, 35 N. Y. Supp. 496, affirmed 157 N. Y. 686, 51 N. E. 1091; Genet v. Delaware & Hudson Canal Co., 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127. It is true that there was no express agreement as to the quantity of goods that the defendant was to manufacture, nor can it be said that there was an implied agreement that it should manufacture any particular quantity of goods; but I think there was an implied agreement that it was to continue the manufacture in good faith. If it had done so, and did not manufacture as much during the year 1900 as it did during the preceding year, undoubtedly the plaintiffs would be limited in their commissions to the goods actually manufactured and sold by them; but here the defendant has broken its contract by suspending the manufacture altogether. In these circumstances, plaintiffs are entitled to recover such damages as they are able to show flowing from defendant's breach of the contract. That damages to the plaintiffs resulted is reasonably certain. The evidence fairly warranted the inference that if the defendant had continued the manufacture of cotton wadding it would have manufactured as much, if not more, in the year 1900, as it did in the previous year, and that the plaintiffs would have been able to sell at least as much that year as they sold the preceding year, exclusive of the carriage wadding, which branch of the business would likely have been as profitable as in the year before. This evidence of the probable profits that would have been realized by the plaintiffs, if the defendant had fulfilled its contract, afforded a sufficient basis for the recovery of damages, and sustains the verdict. Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801; Dart v. Laimbeer, 107 N. Y. 664, 14 N. E. 291; Bagley v. Smith, 10 N. Y. 489, 61 Am. Dec. 756.

It is claimed that this is not the theory on which the question of damages was submitted to the jury, and that the learned trial judge charged, in effect, that there was an implied contract on the part of the defendant to manufacture as much cotton wadding during the year 1900 as it had manufactured during the previous year, but we do not so read the charge. The learned judge drew the attention of the jury to the figures showing the sales during the year 1900 and for the previous year, so far as made, and in doing so distinctly stated that the plaintiffs could not recover on the theory that more goods would have been manufactured and sold in the year 1900 than in the year 1899, but that the amount manufactured and sold during the previous year would be the maximum basis of recovery. The jury were not instructed, as a matter of law, that the plaintiffs were entitled to recover the maximum amount of commissions figured on the theory that the manufacture and sales would have equaled those of the previous year; and we think they must have understood from the charge that they were to determine what amount of goods, not exceeding, however, the amount manufactured during the previous year, defendant would have manufactured during the year 1900, which the plaintiffs would have sold, were it not for the suspension of business, and to award as damages the plaintiffs' commission on this amount.

It follows, therefore, that the judgment and order should be affirmed, with costs. All concur, except PATTERSON, J., who dissents.