FOURTH DEPARTMENT, MAY, 1905.          [Vol. 105.

RAPHAEL HERMAN and CHARLES C. LADD, Respondents, *v.* THE
WILLIAM B. PIERCE COMPANY, Appellant.

*Contract giving the exclusive right to sell an article in a certain territory — when an
effort to sell it in another country is not a violation of such contract — measure of
damages for its breach — proof of its value.*

A corporation engaged in the manufacture and sale of a patent flue cleaner
owned by it entered into an agreement with a copartnership whereby it sold
to the latter the exclusive right to sell the flue cleaner in a certain portion of
the United States. The copartners stipulated that they would "sell no other
or competing cleaners" during the period of the agreement. Such agreement
was for a term of two years, and provided that if the copartners "shall have
fully performed the conditions of this agreement at the end of two years from
the date hereof the said parties shall have the right at their option to a renewal
of this agreement upon the same terms and conditions for a further period of
three years."

The cleaner was not patented in the Dominion of Canada, and the corporation
did practically no business in that country and it made no attempt to do any.
During the term of the agreement the copartners, in conjunction with one
Herman, projected a plan for selling the cleaners in Canada, but the plan was
never consummated and no sales were ever made by the copartners in that
country. They did, however, loan the said Herman money, which it was
assumed that he used in the consummation of the business of selling the
cleaners in Canada.

*Held,* that the connection of the copartners with the sale of the cleaners in Canada
did not justify the corporation in refusing to renew the agency agreement with
the copartners;

That in an action brought by the copartners to recover damages resulting from
the corporation's failure to renew the agency contract, the measure of the
plaintiffs' recovery was the value of the contract to them;

That an itemized statement of the copartners' receipts and expenditures con-
nected with the agency business for the two years during which they carried
on such business, and a statement of the monthly sales made by them which
showed the gradual extension of the business, afforded satisfactory proof of
the value of the contract to the copartners.

*Quære,* whether the clause in the agency contract prohibiting the plaintiffs from
selling "other or competing cleaners" had any reference to the sale of the
cleaners covered by the corporation's patent.

*Semble,* that in any event such prohibition had no application to sales of cleaners
made outside of the United States.

APPEAL by the defendant, The William B. Pierce Company,
from a judgment of the Supreme Court in favor of the plaintiffs,

entered in the office of the clerk of the county of Erie on the 15th day of August, 1904, upon the report of a referee.

The action is brought to recover damages for breach of contract by the defendant, in refusing to renew a written agreement for the term of three years upon the election of the plaintiffs as provided therein, and also for damages accruing to the plaintiffs by reason of the defendant filling orders from the territory of the plaintiffs in violation of said agreement.

*Moses Shire*, for the appellant.

*Carlton E. Ladd*, for the respondents.

SPRING, J.:

The defendant, a corporation, was the owner of a patent flue cleaner and engaged in its manufacture and sale. On the 25th of July, 1900, it entered into a written agreement with the plaintiffs who became copartners under the name of the Power Specialty Company whereby it sold to said plaintiffs the exclusive right to sell said cleaners in all that part of the United States of America lying west of the westerly boundary of the State of Ohio, including that part lying west of the extended line of said boundary both north and south. The defendant agreed to sell plaintiffs the manufactured cleaners at prices stipulated therein. The agreement contained the stipulation on the part of the plaintiffs " that they will sell no other or competing cleaners during the period of this agreement." The agreement was for the term of two years, with the provision " that in the event that the said parties of the second part shall have fully performed the conditions of this agreement at the end of two years from the date hereof the said parties shall have the right at their option to a renewal of this agreement upon the same terms and conditions for a further period of three years."

Immediately upon the execution of the agreement the plaintiffs under their copartnership name commenced the sale of the cleaners in the territory designated, and during the two years actually sold 398 cleaners, and purchased of the defendant about 440, which were considerably in excess of the number fixed by the agreement as necessary to prevent its termination by the defendant. The

business proved to be profitable to the contracting parties, and on the 7th of July, 1902, the plaintiffs by a notice served on the defendant signified their election to renew said agreement. On the twenty-fourth of that month the defendant by written notice declined to renew "for the reason that you have violated the agreement of the 25th of July in letter and in spirit, and have done many things contrary to the interest of the William B. Pierce Company and have not acted for the best interests of the William B. Pierce Company, which company you represent."

The plaintiffs had been diligent in building up a trade in the large territory assigned to them, and at great expense, and had secured an assured market for future sales. No sales of the cleaners to any extent had been made west of the State of Ohio when they undertook the business, so that whatever market had been established might well be attributed to their enterprise and sagacity. The option to renew was accordingly valuable to them and should inure to their benefit unless some strong countervailing facts developed showing that they had violated the terms of the agreement.

It will be noted that the right to renew was only permissible in the event that the plaintiffs "shall have fully performed the conditions of this agreement." The defendant contends that this precedent requirement had not been fulfilled by the plaintiffs, and its reason for failing to renew was due to this alleged failure of the plaintiffs.

The patent privilege owned by the defendant did not extend beyond the United States. The defendant had never protected itself by securing a patent in the Dominion of Canada, and had not made any sales in that country or endeavored to do so. In the early part of 1902 the plaintiffs, in conjunction with one Benno Herman, projected a plan for carrying on the business of selling these patent cleaners in Canada, and for that purpose opened an office in Toronto under the name of the Power Specialty Company. A copartnership agreement was prepared but never executed, and the plaintiffs never consummated the contemplated project and no sales were ever made by them in Canada during the life of their agreement with the defendant. They did, however, loan said Benno Herman money, which it is assumed he used in the consummation of this business in Canada, and this is the chief reason urged by the

appellant why it was authorized to decline to renew the agreement. We seriously doubt the clause in the agreement that the plaintiffs were to sell "no other or competing cleaners" having any reference to the sale of the machines covered by the patent owned by the appellant. The patent protected the patentee in the United States, and the range of the sales was confined to this country. The purpose apparently was to prohibit the plaintiffs from engaging in the sale of competing cleaners of other manufacturers. If, in view of the closeness of the relation which should exist between parties engaged in a business venture, the scope of the prohibitory clause was more extended than just suggested, we still think it has no application to sales made outside of the United States. The defendant had no greater right than any one else to sell its machinery in Canada or anywhere beyond the domain of the United States. Any manufacturer could make and sell these machines in Canada without let or hindrance from the defendant. Beyond that there was no indication of any desire on the part of the defendant to sell in Canada. The first move toward establishing in that country would have been to obtain a patent to protect it from competition against sales by others of its own invention. It only sold four machines in the entire Dominion of Canada prior to the termination of the agreement with the plaintiffs and those sales were made after Benno Herman had started the business in Toronto and apparently under the incitement of that opposition. If, therefore, we assume that the plaintiffs did undertake to sell machines in Canada they were not competing with the defendant, for it was not making sales in that country to any extent. Competition implies rivalry in the business, and as the defendant had no trade there could be no contest or competition. But other extrinsic facts bearing upon the transaction acquit the plaintiffs of the charge of violating the agreement. When the business was started in Canada Benno Herman, its real projector, was in the employ of the defendant. Upon the advice of their counsel the plaintiffs declined to consummate the intended copartnership with him and abandoned the scheme as the referee has found. Again the president of the defendant stated that he did not care for the Canadian business. The only criticism that he made on the venture of the specialty company in that country was that the cleaners sold by Benno Herman were manu-

factured by the same concern which supplied them for the defendant, but there is nothing connecting the plaintiffs with that transaction.

After Mr. Davis was elected president of the defendant he and the plaintiff Raphael Herman were not in full accord. Davis endeavored to induce the plaintiff Ladd to cancel his business connection with Herman, promising Ladd to make a more favorable arrangement with him alone than the one already existing.

Ladd did not assent to this proposition and the suggestion is not without force that the real animus of the refusal to extend the agreement is attributable to the somewhat unfriendly feelings existing between Davis and Herman. Something beyond a mere pretext or unfriendliness between the parties was necessary in order to authorize the cancellation of the valuable privilege of renewal which the plaintiffs had. The only requirement, stipulated to secure them the extension, was the full performance of the conditions of the agreement assumed by them, and the referee has found that they fulfilled this obligation and the facts uphold his finding.

The plaintiffs had established a valuable business and even in its incipient stage and with a large outlay had made it a financial success. The proof shows that the profit inuring to them was over $10,000 in the two years. During that period it materially increased The measure of the plaintiffs' recovery was the value of the contract to them. (*Dickinson* v. *Hart,* 142 N. Y. 183; *Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 id. 205; *Dunham* v. *Hastings Pavement Co.,* 95 App. Div. 360; *Horton* v. *Hall & Clark Mfg. Co.,* 94 id. 404.)

The plaintiffs gave in evidence an itemized statement of their receipts and expenditures connected with the business for the two years in which they carried it on and the monthly sales were also given showing the gradual extension of their trade. This evidence afforded tangible and satisfactory proof of the value of the contract and was adequate to support the assessment of damages made by the learned referee.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.