(160 App. Div. 161)

SCHLOSSBERG v. BRODY et al.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

1. EVIDENCE (§ 129*)—ADMISSIBILITY—SIMILAR TRANSACTIONS.

In an action for breach of a contract under which plaintiff was employed by defendants to manufacture skirts for defendants during the manufacturing season, evidence as to the number of skirts manufactured by plaintiff for defendants during previous seasons and the amount of his profit was admissible, where he testified that the general business conditions were the same during the season in question as during such prior seasons, to show the amount of profits which he would have made had the contract not been broken.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. § 129.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONTRACTS (§ 352*)—ACTIONS FOR BREACH—EVIDENCE—SUFFICIENCY.

In an action for breach of a contract by which plaintiff was employed to manufacture skirts for defendants during the manufacturing season, where plaintiff introduced evidence as to the number of skirts manufactured by him during previous seasons and the amount of his profits, and testified that the general business conditions were the same during those seasons, while defendants without introducing their books testified as to the number of skirts manufactured during the season in question, which they claimed to be much less than during prior seasons, the amount of profit that plaintiff would have made had the contract not been broken was a question for the jury, and the verdict would not be disturbed merely because the jury did not believe defendants' evidence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1200, 1828; Dec. Dig. § 352.*]

Laughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Benjamin Schlossberg against Henry Brody and another. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Alfred B. Nathan, of New York City, for appellants.
I. Gainsburg, of New York City, for respondent.

INGRAHAM, P. J. [1, 2] This action was brought for a breach of contract of employment. The plaintiff testified that in September, 1910, he started to work for the defendants as a foreman at a salary of $25 a week, with an interest in the business; that in October, 1910, he made a new agreement with the defendants by which he was to receive a certain sum for each skirt manufactured by him for the defendants which was to last up to the end of July, 1911; that the busy season started in January and lasted about four months; that with this money that he received from the defendants he paid his help, and the rest of it was his profit; that there were sometimes as many as a hundred different kinds of skirts manufactured, and the prices that he was to receive for making these skirts ranged from 20 to 40 cents, or up to 50 cents, depending upon the style of the garment; that having made this agreement in October, in the month of December, Mr. Funt, one of the defendants, told him that he should reduce the prices because help in Passaic to which place the defendants had moved their manufactory was cheaper than in New York; that the plaintiff refused to reduce the prices, when Funt said that he had got some one else who would make these skirts for less. The plaintiff then testified that under his former employment with the defendants in the months of January, February, March, and April in each year, which was the busy season, he had manufactured for the defendants about 500 skirts a day, sometimes more than that; that there was an average of 500 a day during the four months of the busy season; that the season in the year 1911 did not change, or was not in any way different from the season of the preceding

years; that he could not give the definite amount each day, as he had no records; that he turned in slips to the defendants and they paid him for his work and kept the slips; that during January, February, March, and April, 1909, the period during which he had worked for the defendants, the average net profits would be from $40 to $50 a week, but after the 1st of July there would be no work, and the season would start again the following January.

After this contract was made in October, the plaintiff seems to have continued in the employ of the defendants down to the end of December, 1910, and on the 1st of January the defendants moved to Passaic, N. J. On cross-examination plaintiff testified that he made ten cents profit on some skirts, and that his average profit was five cents per skirt. The plaintiff also called as a witness one Kass, who was in the plaintiff's employ for the season ending in July, 1909, at the defendants' place of business. This witness testified that the work that she did there was to figure up how much work the plaintiff did for the defendants, checking off the goods and examining them as they were delivered by the plaintiff to the defendants for which she made tickets and delivered them to the defendants, when the defendants paid the plaintiff for the number of skirts that he had made; that the witness worked there during the months of February, March, and April in the season of 1909, and in the end of July, 1909, she figured out the amount of work that the plaintiff did during the preceding six months; that the number of skirts that the plaintiff made for the defendants during that time was more than 80,000, and during the months of January, February, March, and April the plaintiff made for the defendants about 500 skirts a day, or 3,000 a week; that the amount of money that remained to the plaintiff after he had paid the expenses was from $150 to $190 a week during these three months; and this was all the testimony as to the amount that would be due the plaintiff if the defendants had completed this contract. Thus, the testimony of the plaintiff that the season of 1911 was the same as the seasons of 1908 and 1909, and what his profits had been in the year 1909, was offered as some evidence as to what the plaintiff would have made during 1911, if he had been allowed to complete his contract. There was no evidence of the plaintiff tending to show how many skirts the defendants actually made during the season of 1910 and 1911, but it appeared that after the contract was made the defendants moved to Passaic, N. J., and subsequently conducted their business there. The defendants deny the contract as alleged by the plaintiff, and then by the testimony of the defendants offered evidence tending to show the exact number of skirts that they made during the season of 1910 and 1911. The defendants' books were not introduced in evidence, and there was no independent testimony as to the number of skirts that they actually manufactured after they moved to Passaic in the season of 1911.

The court then submitted the question to the jury as to whether there was a contract and whether the defendants had broken it, and their verdict in favor of the plaintiff, I think, was sustained by the evidence. The court then charged the jury that, if they should find

in favor of the plaintiff that there was a breach of contract for the season of 1910 and 1911, the jury could take into consideration the testimony that had been given as to the work done under the prior employment in determining the amount of the plaintiff's damage, calling the attention of the jury to the evidence of the plaintiff that there was a marked decline in the business from January 1 to August 1, 1911, and that during this latter period the defendants manufactured only 10,255 skirts. There was no exception to this charge and no request to direct the jury to find a verdict for nominal damages only if they found that the defendants were guilty of a breach of the contract, or limiting the recovery to the profits upon 10,255 skirts that the defendants claimed had been manufactured during the season of 1910 and 1911. The jury found a verdict for the plaintiff for $1,- 500 of 15 cents upon each skirt which the defendants admitted they had manufactured during the season of 1910 and 1911. I think that the testimony as to the amount of business that the defendants did in the prior season was competent, in connection with the plaintiff's evidence that there was no difference between the seasons of 1909, 1910, and 1911. Its probative force depended entirely upon the defendants' business during the season of 1910 and 1911, and the plaintiff's testimony was that the general business conditions were the same. The defendants' testimony was that the business for 1910 and 1911 was not as good as the prior years. The plaintiff was entitled on that evidence to a verdict for the profit that he would have made if the defendants had completed the contract. The jury were not bound to believe the evidence of the defendants as to the extent of their business. The defendants did not introduce in evidence the slips from which the entry in their books had been made; nor did they introduce in evidence the books of account which would show the actual transactions as to the amount of their business. There was a question on this evidence as to the amount of profit that the plaintiff would have made and the amount of business that plaintiff would have been able to do if the defendants had not broken the contract.

The question was a fair one for the jury, and I think their verdict should not be disturbed.

The judgment should be affirmed, with costs.

McLAUGHLIN and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). The defendants were copartners engaged in the business of manufacturing women's cloaks, suits, and skirts in the borough of Manhattan, New York. The season during which they were engaged in making up goods covered a period of ten months, from October to August, but the most active part of the season was during the four months succeeding December. For the season commencing October 1, 1908, the defendants employed the plaintiff as, what is known in the trade as, an "inside contractor" to · furnish the labor in making all their skirts, and he in turn employed in the performance of his contract, at times as many as 48 hands during the active part of the season. The contract for that season was

fully performed. In September, 1910, plaintiff entered the employ of the defendants, under a contract from week to week, as a foreman on a salary of $25 per week, and continued to work under this contract for a period of five weeks, for which he received his pay.

At that time concededly a new contract was made between the parties, but they disagree with respect to its terms. This action is brought for damages for an alleged breach of the contract then made. The plaintiff contended, and offered evidence to show, that the new contract was for the balance of the season ending August 1, 1911, and that the terms of the contract, material to the issues, were that he was to furnish the labor for the making of all of defendants' skirts, for which he was to receive a minimum price of 20 cents and a maximum price of 40 cents per skirt; the precise amount between these figures, depending on the styles and the amount of work involved, to be mutually agreed upon from time to time. The defendants claimed, and adduced evidence tending to show, that the change in the contract was occasioned by the business being slack, and by their being unable to afford to pay the amount they had been paying plaintiff; that the new contract was indefinite as to time and provided for compensation to plaintiff on a piecework basis to be specially agreed upon with respect to each style of garment made; and that plaintiff at that time desired employment as an inside contractor, so called, but that they explained to him that on account of their relations with the Cloak & Suit Association they were precluded from making such a contract. The business relations between the parties under the new contract continued until the latter part of December, 1910, and plaintiff was fully paid for his services down to that time. At that time the defendants were about to move their manufacturing plant to Passaic, N. J., which they did in January, 1911.

The plaintiff's version of the circumstances under which the alleged breach of contract arose is that the defendants informed him that they could have the skirts made up at lower prices than he was receiving, and asked him to consent to a reduction of the prices, which he refused, and that he tendered his services, but they refused to accept them. The version given by the defendants is, in substance, that plaintiff abandoned the employment on account of the inconvenience to him of getting back and forth to Passaic. On the issues with respect to the terms of the contract and the breach thereof, the jury found in favor of the plaintiff, and we are not asked to review their determination.

The appellants make two minor contentions, which may conveniently be disposed of before taking up the main point. It is contended that plaintiff should have pleaded loss of profits to entitle him to recover, under the rule which precludes the recovery of loss of profits in an action for a breach of contract unless the party in default had notice that such loss might result from his breach of contract, and unless such prospective profits are pleaded (Stecker v. Weaver Co., 116 App. Div. 772, 102 N. Y. Supp. 89, affirmed 192 N. Y. 556, 85 N. E. 1116); but manifestly that rule has no application to this case, which is to recover the damages directly occasioned by the defend-

ants' breach of the contract, consisting of the profits that he would have made, not as on a resale of goods, but by receiving the compensation to which he was entitled under the contract. The appellants also contend that the court permitted witnesses to testify with respect to the number of skirts made by the defendants during the season covered by the prior contract, in violation of the rule that parol testimony cannot be given as to the contents of a writing. It appears that, as the plaintiff made and delivered the skirts, slips were filled out by an employé of the plaintiff, designated a bookkeeper, showing the number of skirts thus made up, and at intervals these slips were turned over to the defendants and were used as the basis of paying the plaintiff, and were retained by the defendants. The plaintiff's bookkeeper also entered daily in a book, which she retained, the number of skirts shipped out from time to time, and at the end of the season added up the total number of skirts delivered, and the plaintiff testified that he also at the end of the season figured up the number of skirts he had made. They were both permitted to testify, over objection and exception, that according to their recollection the total number of skirts manufactured that season exceeded 80,000. We are of opinon that this was not testifying to the contents of the slips, or memorandum book, and that it was entirely competent.

The remaining questions relate to exceptions to evidence bearing on the question of damages, and the sufficiency of the proof of damages. The action was commenced on the 24th day of April, 1911, or a little more than three months before the expiration of the period covered by the contract; but it was not tried until more than a year after the expiration of that period. The defendants continued in the same business until long after the expiration of the period covered by the contract, and, although plaintiff examined one of the defendants before trial, he offered no evidence upon the trial with respect to the number of skirts manufactured by the defendants between the breach of the contract and the 1st of August, 1911, when it terminated. The plaintiff was permitted, over objection and exception duly made and taken, to give the testimony to which reference has been made with respect to the number of skirts manufactured under the former contract. This evidence was evidently offered and received on the question of damages, and it, together with evidence tending to show that the average profit made by the plaintiff on the skirts was five cents per skirt—and this is an extremely favorable view to plaintiff of the evidence, for it related to profits under the prior contract, which of course could not be the basis of a recovery—afforded the only basis for damages when the plaintiff rested his case. The defendants both testified in their own behalf with respect to the number of skirts actually manufactured by them during the contract period after the breach. One of them testified that the precise number of skirts manufactured by them during that period was 10,255, and the other testified that the number was about 10,000. The books of the defendants showed the number of skirts they manufactured, and it appears by the testimony of one of the defendants that the books were in New York and accessible at the

time of the trial. No objection was interposed to their testimony on this point on the ground that the books were the best evidence.

In these circumstances, and particularly in view of the fact that the plaintiff must have known that the books kept by the defendants would show the number of skirts thus manufactured, and had or might have had an examination of one defendant before trial concerning it and might have examined the other, there is no reasonable basis for questioning the correctness of the figures given by the defendants. On this point, an examination of the charge of the learned trial justice does not show that the jury were specifically instructed that the recovery should be limited to the profits that would have been made by the plaintiff on the skirts actually manufactured by the defendants. It cannot be said, therefore, that the jury disbelieved the testimony of the defendants on this point, and it is more likely that they erroneously inferred from the evidence received with respect to the number of skirts manufactured under the prior contract that the defendants could and should have made more than they in fact made during the period after the breach of contract. The period of plaintiff's employment terminated more than a year before the trial, and plaintiff had examined one of the defendants before trial. The evidence is uncontroverted that books kept by the defendants showed accurately the number of skirts manufactured by them during the period between plaintiff's discharge and the expiration of the period of his employment. In these circumstances, his right of recovery was measured by the number of skirts actually manufactured by the defendants, and there appears to have been no basis for the evidence with respect to the number of skirts manufactured by them under the prior contract, and therefore I think the court erred in receiving that evidence. See Brightson v. Claflin, 180 N. Y. 76, 72 N. E. 920. But it is not necessary, in the view I take of the case, to decide that question, for, if it was competent, its only material bearing was on the question as to the number of skirts in fact manufactured by the defendants during the contract period after the breach.

The defendants did not obligate themselves to do any particular amount of business, or to call upon the plaintiff to make a given number of skirts; and it is manifest that the plaintiff's employment was not such that it could have had any material influence on the number of skirts that the defendants were able to sell during the season. Moreover, the evidence tends to show that their orders for the season had been placed before the breach of the contract, and it does not appear that they canceled any of them on account of discharging him, or did not manufacture as many skirts as if they had retained him in their employ. Of course, if the action had been tried before the expiration of the period covered by the contract, then it would have been necessary for the jury to estimate the probable profits which the plaintiff would have realized during the remaining period of the contract, and the business done prior to that time would afford a basis therefor (Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801; Horton v. Hall & Clark Mfg. Co., 94 App. Div. 404, 88 N. Y. Supp. 73; Cross v. Florsheim, 102 App. Div. 498, 92 N. Y. Supp. 832; Herman v. Pierce Co., 105

App. Div. 16, 93 N. Y. Supp. 413; see also, Wakeham v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Brightson v. Claflin, supra); but where, as here, the contract period had expired, and there was available evidence with respect to the actual damages, the recovery is limited thereby (Brightson v. Claflin, supra).

If the defendants had not been guilty of the breach of the contract, the plaintiff would have been entitled only to be compensated for the skirts actually made by him for them. Manifestly, he cannot recover a greater amount for the breach than he would have received if he had been permitted to fully perform the contract. The plaintiff testified that his average profits under the former contract were about five cents per skirt; but he gave no evidence with respect to his profits under the contract in question, nor did he show that his profits were the same on skirts manufactured at the minimum price as on those manufactured at the maximum price. On the contrary, his evidence shows that his profits were greater on the high-priced skirts. It is to be borne in mind that the contract, as shown by the testimony of the plaintiff which has been accepted by the jury, left it discretionary with the defendants to agree or not to agree on a price in excess of the minimum price. The plaintiff might have shown by the testimony of the defendants, or by their books, the prices of the different skirts which they manufactured after he was discharged, and that, with evidence as to the profits he would have realized on the different grades of skirts, would have afforded a basis for recovery; but this he utterly failed to do.

I therefore vote for reversal and for a new trial.

DOWLING, J., concurs.