Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 Whether or not-the court erred in its - charge, and in the exclusion of the evidence excluded, depends on the proper .interpretation of the contract and the rule of damages which shall be applied ‘in this action to the breach of it.
 

 It is insisted by the plaintiff that the defendant promised to pay him for his invention four hundred shares in addition-to the one hundred shares paid on' the delivery of the title, unless the arbitrators should relieve the company by fixing some less amount, and- a great deal of learning touching the
 
 *26
 
 doctrine of conditions subsequent.and precedent has been invoked in support of this position. But this doctrine has no application here, for, manifestly, this is not. ah undertaking to which a condition subsequent could be attached. It is easy to determine-why this contract' was riiade, the nature of it, and the acts to be performed by the contracting parties. The American Telegraph Company were engaged in carrying on the telegraph business in some portions of the country., and naturally desirous of appropriating to itself any new invention which would facilitate the transmission of telegraphic messages. Humaston claimed that his-system -just patented would do five times as much business on one wire as the ordinary systems then in pse. If it could do this with-equal accuracy and reliability and at-no greater cost, the value of it could be hardly overestimated, but there had been no .experiments to test the-question of whether or not it was capable of doing these things. It might do the woik claimed for it and yet be so unreliable, or the expense of working and using-it so much greater than the expense of working and using the inventions then open to the public or used by the company, that its purchase would be dear at any price. The.company, desirous of possessing every thing new and useful in the line of their business, were willing to'risk something'in the acquisition of these inventions,-but unwilling to pay the estimate of value which Humaston put upon them without trial of their utility. This estimate .was $50,000, as the proof on the trial was that the stock of the company stood at par in the market at the date of the contract. The company, said to Humaston, -'W-e will, take your patents, whether valid or not, and., pay you $5000 for them if you and Leflerts stipulate not to compete with us for a period of ten' years, and if they are valid, whether useful- or, ndt, the compensation shall be increased to $10,000. ' But We cannot promise additional, compensation unless,, after proper experiment, your-systenrshall be proved to: be worth more. It may be that .your claim of rapid performance can be sustained, and yet the system, owing to. its greater cost than those now in use, or some other controlling practical
 
 *27
 
 consideration, be of comparatively little value to us. This can only be determined, after trial, by'some impartial tribunal. We are willing that this tribunal shall he referees mutually selected, to whom shall be submitted the question of whether we shall pay anything more than the $10,000 already paid, after the merits of your system have been tested by them and its capability and value established. They may reach the conclusion that you are sufficiently compensated already, and if they, do, their awhrd must be accepted as a final settlement of the matters of difference between us. If they reach a contrary conclusion they must fix the amount of consideration which we are to pay in addition to what you have already received; but this must be within the limit of four-hundred shares of stock equivalent to $40,000.
 

 This is a fair analysis of the provisions of the contract and of the considerations on which it was.based. Instead of it binding the company, to pay four hundred shares, unless ’ a less number was fixed by the arbitrators, it left them to 8ay whether Humaston was entitled to any more than he had already got, and if so, how much. There was no concession by the company that the inventions were worth any .more to it than the hundred shares. It might turn out on the trial that the price already paid was excessive, or, on the contrary, that it was not sufficiently remunerative. This point of value the triers were to determine, and if determined favorably to the plaintiff he would have $ causé of action against the defendant. .Until this determination, if there had been no interruption to the arbitration, no cause of action could, arise. It was a reasonable provision that the value of these inventions should be submitted to the arbitration of practical business men, and if Humaston, instead of the company, had refused to proceed with the arbitration he could not resort to an action, for the defendant would not have been in default, and, therefore, not liable to suit.
 
 *
 
 But the defendant broke the agreement and revoked the
 
 *28
 
 submission, and Humaston asks that in consequence of this wrongful action of the defendant his rights may be determined by the court and jury, instead of by arbitration.
 

 It becomes, therefore, important to determine what is the mehsure of liability for the breach of contract by the defendant If we are correct in our interpretation of the contract, this action cannot be supported as an action seeking damages for breach of contract to deliver stock, for there was no engagement to deliver any, except, on a condition which has not happened, and there is no proof that the arbitrators would have found that Humaston was entitled to receive more stock than he had already obtained.
 

 The action can be supported for the value of the property, and this was the proper subject of inquiry at the trial. The company covenanted to pay this value, to be ascertained in a particular mode, and as they have prevented this mdde being adopted, they cannot take advantage of their own wrong and deprive the plaintiff of the opportunity of showing to the feourt and.jury what it.is. In lieu of the award of the arbitrators the verdict of the .jury can be asked by the plaiutiff to determine it. The ascertainment of this value was the essence of the contract, the thing on which the submission was based, and the revocation of the submission leaves the jury to settle it. Benjamin, in his Treatise on Sales,
 
 *
 
 says, if the performance of the condition for a valuation.be rendered impossible by the act of the vendee the. price of the thiug sold must be fixed by the jury on a
 
 quantum
 
 valebat, as in
 
 Clarke
 
 v. Westrope,
 
 †
 
 where the outgoing tenant sold the, straw on a farm to the incomer, at a valuation to be made by two indifferent persons, but, pending the valuation, the buyer consumed the straw. And thedoctriue of the text is sustained by adjudged cases in this country and England.
 
 ‡
 

 
 *29
 
 Nothing is, therefore, due on this contract, unless the court and jury, sitting in the place of the arbitrators, shall decide that the plaintiff is entitled to recover for the sale of his inventions more than he has already received. The case was tried on this theory, and the court charged the jury that the value of a specified amount of stock was not the legal measure of the plaintiff’s damages, but that he was entitled to recover the excess-(if any there was) which the value of what he sold and transferred to the company, enhanced by the agreement of the plaintiff and Lefferts not to enter into competition with the company, as stipulated in the contract, had, when sold and delivered, over the amount which he had already received; and this the parties agreed Was one hundred shares of the defendant’s stock, of the aggregate value of $10,000, with interest on such excess from the date of the revocation of the powers of the arbiters. This charge is in conformity with the views we have expressed of the obligations of. this contract, and of the rule of damages applicable to the breach of it.
 

 It is urged, however, that the court erred in excluding testimony of the value of the defendant’s stock both when they sold out-to the'Western Union Company, and when the revocation occurred.
 

 It is not perceived how the sale to the Western Union Company changed the rights of the parties, for there is nothing to show that it hindered the defendants from acquiring in the market at any time a sufficient number of shares of its stock to comply with thp award which it was expected the arbitrators would be • suffered to make long after this sale took place.'-
 

 If there had been an agreement to deliver a certain quantity of stock, and an action had been brought for the conversion of it, on the ground that the defendant by the sale to another company had put it out of its power to comply with the terms of its agreement, evidence of the value of the stock at the time the sale occurred would be competent. And so would evidence of its value at the date of the revo
 
 *30
 
 cation, if the plaintiff was in a position to support an action for damages for'breach of contract to deliver stock. But as he is limited in his recovery to the value of his inventions when sold and delivered, evidence of the value of shares of stock at all is only proper as tending to show the estimate, put upon the property by the parties at the time they made their bargain. And as the value of the stock in 1861, when the contract was concluded, was directly shown, its value at any other time became unimportant. The Circuit Court proceeded on the theory, and we think correctly, that, the .defendant intended to give for and considered the plaintiff’s property worth (if it performed certain conditions) the cash equivalent of five hundred shares of stock. This was $50,000, which the plaintiff must also have adopted as his estimate of the value of the property when he sold it, as he offered evidence tending to show that it was worth that sum, and claimed that the evidence proved the fact. The conflict of testimony on the worth of the Humaston inventions was very great, for the defendant also introduced evidence tending to prove, and claimed it was'proved, that these inventions were of no value, or if any, no more than the amount already paid for them.
 

 In this condition of the evidence it was a difficult matter for the jury to settle the issue submitted to them, but as they, were able to do it with the aid of the court and eminent counsel, aftei; a lengthy trial, by finding a considerable verdict for the plaintiff, it would seem that he ought to be-satisfied with it.
 

 At any rate there is no error in the record, and the judgment must be
 

 Affirmed.
 

 *
 

 Delaware and Hudson Canal Co.
 
 v.
 
 The Pennsylvania Coal Co., 60 New York, 250.
 

 *
 

 First edition, page 430.
 

 †
 

 18 Common Bench, 765.
 

 ‡
 

 Inchbald
 
 v.
 
 The Western, &c., Plantation Co. (head note), 112 English Common Law (17 Common Bench, New Series), 733; Hall v. Conder, 89 Id. (2 Common Bench, New Series), 53; United States
 
 v.
 
 Wilkins, 6 Wheaton, 135, 143; Kenniston
 
 v.
 
 Ham, 9 Foster (N. H.), 506; Holliday
 
 v.
 
 Marshall, 7 Johnson, 213; Cowper
 
 v.
 
 Andrews, Hobart, 40-43.