THE HOPEDALE ELECTRIC COMPANY, Appellant, v. THE ELECTRIC STORAGE BATTERY COMPANY, Respondent.

SALES — AGREEMENT TO PAY MORE ON FAVORABLE TEST OF ARTICLE — MEASURE OF DAMAGES. Under a contract of sale of an electric plant at a specified price, containing a stipulation that if the vendor's system of storage battery cars, under a test agreed to be made by the vendee and the conditions of which were thereafter to be, and were agreed upon, should equal or prove superior to the system proposed to be operated by the latter, it would pay specified additional sums based upon the

equality or different percentages of superiority, where the vendee refuses to make any test, in the absence of any proof showing that the vendor's system was equal or superior to the other, it is not entitled to the largest or any of the additional sums specified in case of a favorable result of a test, as damages for the breach, but to nominal damages only.

*Hopedale Electric Co.* v. *Electric Storage Battery Co.,* 96 App. Div. 344, affirmed.

(Argued March 9, 1906; decided March 27, 1906.)

Appeal from a judgment entered August 1, 1904, upon an order of the Appellate Division of the Supreme Court in the first judicial department, overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for the defendant.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Austen G. Fox* for appellant.    The defendant had, at most, an election either to make the stipulated test and thus relieve itself of liability to pay any "further sum" to complete the contract price if the result were favorable to the defendant, or, else, to waive making the test and thus relieve the plaintiff of the burden of proving the condition on which its right to the full contract price was made by the contract to depend. (*Robinson* v. *Hunt,* 88 Hun, 285; *Carlisle* v. *Barnes,* 102 App. Div. 573; *Lawson* v. *Bachmann,* 81 N. Y. 616; *Brown* v. *Foster,* 108 N. Y. 387; *Marsh* v. *Holbrook,* 3 Abb. Ct. App. Dec. 176; *Stewart* v. *Huntington,* 124 N. Y. 127; *Nichols* v. *S. S. Co.,* 137 N. Y. 471; *W. H. Co.* v. *Mansfield,* 48 Vt. 378; *T. H. El. Co.* v. *B. S. El. Co.,* 31 Fed. Rep. 535; *Baldwin* v. *Bennett,* 4 Cal. 392.)    There was, in any event, a question for the jury whether, if the test had been made, it would not have produced one of the results which the parties had named in the contract. (*Cahoon* v. *Coe,* 52 N. H. 518; *Bailey* v. *Shaw,* 24 N. H. 297; *Clark* v. *Miller,* 4 Wend. 628; *Lea* v. *Gates,* 10 Ind. 164; *Clifton* v. *U. S.,* 4 How. [U. S.] 242;

*Joannes* v. *Bennett*, 5 Allen, 169, 172; *Blade·*v. *Nolan*, 12 Wend. 173.)

*William H. Page, Jr.*, and *Gilbert H. Crawford* for respondent. The contract sued upon, so far as it had not been executed, was an incomplete agreement, and, therefore, unenforceable. (*United Press* v. *N. Y. P. Co.*, 164 N. Y. 406; *Mayer* v. *McCreery*, 119 N. Y. 434; *McIntosh* v. *Miner*, 37 App. Div. 483; *Nicholls* v. *Granger*, 7 App. Div. 113; *Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79; *Sourwine* v. *Truscott*, 17 Hun, 432, 433; *Reynolds* v. *Miller*, 79 Hun, 113; *Flaherty* v. *Cary*, 62 App. Div. 116.) Even if a breach of contract had ·been shown, the plaintiff, since no evidence whatever of damage was offered, would have been entitled to only a nominal verdict, and the dismissal of the complaint should not be disturbed. (*United Press* v. *N. Y. P. Co.*, 164 N. Y. 406; *Humaston* v. *Tel. Co.*, 20 Wall. 20; *Bernstein* v. *Meech*, 130 N. Y. 354; *Vanderslice* v. *Newton*, 4 N. Y. 130; *Jutte* v. *Hughes*, 67 N. Y. 267; *Kraft* v. *Rice*, 45 App. Div. 569; *McConihe* v. *N. Y. & E. R. R. Co.*, 20 N. Y. 495; *N. C. R. Co.* v. *Schmidt*, 48 App. Div. 472; *Stephens* v. *Wilder*, 32 N. Y. 351.)

Willard Bartlett, J. This action is brought by the Hopedale Electric Company against the Electric Storage Battery Company to recover $500,000 for a breach of the following contract:

"Memorandum of agreement, made this eighteenth day of September, 1895, between the Hopedale Electric Company, a corporation established under and by virtue of the Laws of West Virginia, and the Electric Storage Battery Company, a corporation established under and by virtue of the Laws of the State of New Jersey, Witnesseth: That the said Hopedale Electric Company agrees to sell, and the said Electric Storage Battery Company agrees to buy the letters patent, a list of which is hereunto annexed; also the land and buildings belonging to the Hopedale Electric Company, situate in the town of Milford, in the State of Massachusetts,

together with the cars, tools and machinery and personal property therein, a schedule of which is hereto annexed, and as part of the consideration of this agreement, the said Hopedale Electric Company agrees that a decree may be entered in favor of the complainants in the suit of the Brush Electric Company et al. vs. The Milford and Hopedale Street Railway Co. et al., now pending in the Circuit Court of the United States for the District of Massachusetts, but without damages or costs against the defendants;

"And the said Electric Storage Battery Company agrees that upon tender of conveyance of the property hereinbefore referred to, within thirty (30) days from date, it will pay to the Hopedale Electric Company the sum of one hundred and fifty thousand ($150,000) dollars in manner following: Twenty-five thousand ($25,000) dollars on delivery of con veyances of said property, twenty-five thousand ($25,000) dollars on January 15th, 1896, one hundred thousand ($100,000) dollars on January 15th, 1897, said last two payments of twenty-five thousand ($25,000) dollars; and one hundred thousand ($100,000) dollars respectively to be secured by notes of the said The Electric Storage Battery Company of even date herewith, bearing interest at the rate of six per cent. per annum, payable semi-annually.

"And Whereas the said Hopedale Electric Company claims that the system of storage battery cars, as operated by it at Milford, is equal to and superior to the system controlled by and proposed to be operated by the Electric Storage Battery Company; the said Electric Storage Battery Company agrees that if upon a competitive test of the two systems that of the Hopedale Electric Company is equal to that of the Electric Storage Battery Company it will pay to the Hopedale Electric Company a further sum of One hundred thousand ($100,000) dollars; if five per cent. superior, the sum of one hundred and fifty thousand ($150,000) dollars; if ten per cent. superior, the sum of three hundred thousand ($300,000) dollars; if twenty per cent. superior, the sum of Five hundred thousand ($500,000) dollars.

" The Electric Storage Battery Company agrees that it will proceed forthwith to institute this competitive test.

" The cars and batteries to be operated under the system of the Hopedale Electric Company shall be prepared by and be operated under the management and control of agents selected or approved by it.

" The conditions of the test, such as time, place, track, length of operation, number of cars to be used, etc., under which the test shall be made, shall be agreed upon by both parties as soon as may be after the execution of this instrument, it being understood that the test of superiority shall be determined by the durability, efficiency, economy, speed and reliability of service.

" In witness whereof the said corporations have caused these presents to be signed and their seals hereto affixed by their presidents respectively thereunto legally authorized.

    "HOPEDALE ELECTRIC COMPANY.
          " By Wm. S. Hall, *Pres.*    [SEAL.]
    "THE ELECTRIC STORAGE BATTERY COMPANY.
          " By W. W. Gibbs, *Pres.*   [SEAL.]"

No question arises as to the first part of the contract relative to the transfer of the letters patent, the land and buildings at Milford, Mass., and the cars, tools, machinery and other personal property mentioned in the schedule, or in reference to the disposition of the law suit in the Federal court in Massachusetts. It appears that the vendor did all that it was required to do under this portion of the agreement and that the vendee paid the $150,000 thereby required to be paid. The plaintiff, however, charges a breach of the latter part of the contract in two respects : (1) That the defendant neglected to institute any competitive test as therein provided for and refused to make any such test or in any manner to carry out the contract in that respect; and (2) that in addition to said refusal the defendant has by other acts rendered the performance of the competitive test impossible.

The proof on the trial established the refusal of the defend-

ant to make the agreed test, but no evidence was introduced as to the resultant damages sustained by the plaintiff whose learned counsel insisted, as he now insists, that the defendant's breach made it liable for the largest sum stipulated in the contract as that which should be paid in the event of the most favorable result of the test.   The trial judge declined to adopt this view and dismissed the complaint.

The respondent contends that the contract sued upon, in so far as it has not been executed, was an incomplete agreement and, therefore, unenforceable.   The Appellate Division, however, held that the evidence sufficed to establish that the parties entered into a further agreement as to the terms of the test (left indefinite in the original contract itself) thus rendering the contract capable of enforcement, and I shall make the same assumption here.   The case thus resolves itself into the question whether the plaintiff's measure of damages for this breach of the contract is any one of the four several sums mentioned therein as payable by the defendant in the event of certain specified results of the test (so that it was unnecessary to introduce any evidence on the subject of damages except the contract itself) or, whether, in order to be entitled to more than nominal damages, the plaintiff was not bound to prove some actual loss in consequence of the breach.

The payments provided for as conditional upon the comparative test of the two electric storage battery systems were declared by the Appellate Division not to be a part of the purchase price of the property sold, inasmuch as the title to all of such property had passed upon the payment of the $150,000, and the right to further compensation depended upon the existence of conditions thereafter to be ascertained. However this may be, I agree that this is not a case in which the purchase price furnishes the measure of damages.   In most instances where a sale is made subject to a test of the article sold after it reaches the hands of the buyer, the test is a privilege or right reserved to the buyer to reject the goods or have a reduction of the price if the goods fail to stand the prescribed test, and so, when he neglects or refuses to make

the test, he thereby evinces his willingness to pay the stipulated purchase price and is held liable therefor. In the case at bar, however, the test, although to be made by the buyer, was not for its benefit, but only to determine whether it should pay *more* than it had already paid for the transfer of title to the property which was the subject of the sale. The promise of increased payment was made dependent upon the ascertainment of additional value. In *Waters Heater Co.* v. *Mansfield* (48 Vt. 378) the defendants ordered of the plaintiff a heater at a specified price and received the same with the privilege of returning it within thirty days if it did not work satisfactorily after being used for that length of time. The defendants did not try the heater at all, and a recovery was sustained for the amount of the purchase price specified in the contract. The case of *Thomson-Houston Elec. Co.* v. *Brush-Swan Elec. L. & P. Co.* (31 Fed. Rep. 535) involved a similar contract for the purchase of electrical machinery and material on trial and the same rule of law was applied, the court saying: " The defendant could make the trial or not as it chose, but if it would order the goods for trial, and not make the trial, it would become liable as if they had been ordered without providing for the trial." Such a transaction is very different from that contemplated by the contract herein where the vendee substantially says to the vendor: " I do not believe that certain of the property which you have sold me is equal or superior to some which I already possess, but if it turns out to be so I will pay you an additional sum of money." The fact that the vendee under such circumstances fails to test the alleged equality or superiority, although he has agreed to do so, undoubtedly renders him liable in damages if the alleged equality or superiority be shown to exist; but I do not think the cases cited can be regarded as authority for the proposition that his damages are measured by the sums specified in the contract, without any proof that the property sold complied with the conditions.

It is argued, however, that the defendant had made it impossible for the plaintiff to ascertain its damages, if any

there were, and hence that the transaction is brought within the principle of *Mackay* v. *Dick* (L. R. [6 App. Cas.] 251) and similar cases holding that where under a contract of sale and delivery which makes acceptance of the thing sold and payment of the price conditional on a certain thing being done by the seller, the contract is to be taken as satisfied if the buyer prevents the possibility of the fulfillment of the condition by the seller. As to this point, it is sufficient to say that I do not think the proof establishes the fact that the defendant had rendered it impossible for the plaintiff to show whether it had actually sustained any damages, and if so, in what amount. The plaintiff could have supplied evidence on this branch of the case either by reconstructing the requisite appliances therefor, under the guidance of the patents for the two storage systems which were to be compared and then making the test itself; or it would have been competent, I think, to state the characteristic features of the rival systems to experts in electrical construction and the operation of electric cars and thus qualify them to give opinion evidence as to the merits of each.

The case, so far as the character of the contract and the measure of damages is concerned, is very much like *Humaston* v. *Telegraph Co.* (20 Wall. 20). The contract there under consideration was between a corporation engaged in the transmission of intelligence by telegraph and an inventor who had just patented a system of telegraphy which he claimed would do five times as much business on one wire as the ordinary systems then in use. Mr. Justice DAVIS thus summarized the agreement: "The company said to Humaston, we will take your patents, whether valid or not, and pay you $5,000 for them, if you and Lefferts stipulate not to compete with us for a period of ten years, and if they are valid, whether useful or not, the compensation shall be increased to $10,000. But we cannot promise additional compensation unless, after proper experiment, your system shall be proved to be worth more. It may be that your claim of rapid performance can be sustained, and yet the system, owing to its greater cost

than those now in use, or some other controlling considera-
tion, be of comparatively little value to us.   This can only be
determined after trial by some impartial tribunal.   We are
willing that this tribunal shall be referees, mutually selected,
to whom shall be submitted the question of whether we shall
pay you anything more than the $10,000 already paid, after
the merits of your system have been tested by them and its
capability and value established.   They may reach the con-
clusion that you are sufficiently compensated already, and if
they do, their award must be accepted as a final settlement of
the matters of difference between us.   If they reach a con-
trary conclusion, they must fix the amount of consideration
which we are to pay in addition to what you have already
received; but this must be within the limit of 400 shares of
stock equivalent to $40,000."

After the arbitration proceedings had begun, under this
contract, the telegraph company refused to go on before the
arbitrators and withdrew its submission.   According to the
theory of the learned counsel for the appellant in the case
before us, Humaston, upon the breach by the telegraph com-
pany of its agreement to arbitrate, would have become enti-
tled to recover $40,000, being the largest sum which he could
receive upon the most favorable decision of the arbitrators —
and this without any further proof of damage than the mere
breach of the agreement.   The Supreme Court of the United
States, however, did not so hold.   It declared that nothing
was due on the contract unless the trial court and jury, sitting
in the place of the arbitrators, should decide that Humaston
was entitled to recover for his inventions more than he had
already received.   In other words, the performance of a con-
dition for valuation having been prevented by the act of the
vendee, the price of the thing sold was to be fixed by the jury
on a *quantum valebat.*

I have quoted from this *Humaston* case and discussed it
thus fully because it seems to me analogous in all essentials
to the case at bar, and I think the rule approved therein
furnishes the true measure of damages applicable to the plain-

tiff's claim. If so, the courts below correctly held that his proof established only a right to recover nominal damages and properly refused to interfere with the nonsuit simply to permit such recovery.

I, therefore, advise an affirmance of this judgment, with costs.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and HISCOCK, JJ., concur; WERNER, J., absent.

Judgment affirmed.