## E. I. DU PONT DE NEMOURS POWDER CO. v. SCHLOTTMAN.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

### No. 51.

1. **FRAUDS, STATUTE OF (§ 128\*)—APPLICATION—ADDITIONAL COMPENSATION.**

Where, as supplemental to a contract with a fuse company, defendant agreed that if at the end of a year, in the judgment of its president, the property for any reason had been worth $175,000 to defendant, and it had manufactured double tape fuse at $2 per thousand with powder at $3.60 per keg, defendant would pay plaintiff's assignor $25,000 in bonds or stock, such supplemental agreement was one for additional compensation for additional value, to be construed with the original contract of sale, and therefore was not within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 278; Dec. Dig. § 128.\*]

2. **CONTRACTS (§ 221\*)—CONSIDERATION—IMPLIED PROMISE.**

Where defendant contracted to pay plaintiff's assignor $25,000 in bonds or stock, provided a purchase of a fuse company was consummated and in the judgment of defendant's president, after it had the property for a year, it had for any reason been worth $175,000 to defendant, and it had manufactured double tape fuse at a specified price, the contract impliedly required defendant to operate the plant for a year, and hence, on defendant selling the plant to another, who dismantled it within a year, it was liable for breach of contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1015–1032; Dec. Dig. § 221.\*]

3. **CONTRACTS (§ 349\*)—BREACH—DAMAGES—PROOF.**

Where defendant contracted to pay plaintiff's assignor $25,000 in case a fuse plant, after purchase and operation for a year, showed that it was worth $175,000, but defendant sold the plant to one who dismantled it, rendering it impossible for plaintiff to prove its value by the test specified in the contract, he was entitled to show the value of the plant in other ways.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1096, 1781–1784, 1788–1798, 1809, 1811–1814, 1817, 1818; Dec. Dig. § 349.\*]

4. **DAMAGES (§ 126\*)—CONTRACT—BREACH—MODE OF PAYMENT.**

Where defendant's contract to pay plaintiff $25,000 in bonds or stock of defendant company in case a fuse plant was purchased and after a year's operation disclosed that it had been worth $175,000, defendant having sold the plant within a year to a purchaser who dismantled it, and having refused to pay the additional amount in securities, plaintiff was entitled to recover money.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 344–353; Dec. Dig. § 126.\*]

In Error to the District Court of the United States for the Southern District of New York.

For opinion below, see 210 Fed. 356.

W. H. Button, of New York City, for plaintiff in error.

L. L. Kellogg, of New York City, for defendant in error.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

WARD, Circuit Judge. In July, 1908, one Grubb was negotiating with T. C. Du Pont, president of the Du Pont Powder Company, for the sale of the whole capital stock of the Pittsburgh Fuse Company to the Du Pont Company. July 20th Du Pont wrote to Grubb as follows:

"Mr. Chas. G. Grubb, Building—Dear Sir: Should the deal now under discussion for the Pittsburgh Fuse Mfg. Co. go through, and after we have had the property a year, it is understood that if in my judgment the property has for any reason been worth $175,000 to our company, and we manufactured double tape fuse at $2 per thousand with powder at $3.60 per keg, we are to pay you $25,000 in either bonds, preferred or common stock of our company as we may elect.

"Yours truly,                                        T. C. Du Pont, President."

On July 24th the deal referred to in the letter went through in a formal agreement whereby the Du Pont Company agreed to pay Grubb $75,000 of its preferred and $75,000 of its common stock for the whole capital stock of the Pittsburgh Fuse Company. Grubb delivered the Fuse Company's stock and the Du Pont Company transferred to it its own stock, but, after operating the plant for about six months, sold it to other parties, who dismantled it.

Grubb, the plaintiff's assignor, died before suit brought, and Mr. T. C. Du Pont did not testify to the circumstances attending the writing of the letter of July 20th. At the conclusion of the case each party asked Judge Ray to direct a verdict in his favor, and he did direct a verdict in favor of the plaintiff for $25,000.

The complaint treats the letter and the formal agreement as one contract, alleges that the defendant by selling the plant of the Fuse Company wrongfully prevented the test agreed upon, and claims damages for the difference between the fair and reasonable value of the Fuse Company's capital stock alleged to be $175,000 and the market value of the defendant's stock actually received, alleged to be $120,000.

[1] The defendant contends that the letter of July 20th is a separate contract, and, as it is not to be performed within the year, is void under the statute of frauds, because it does not state any consideration. We think, however, that the two documents are to be considered together. The Du Pont Company was to pay $25,000 more in securities if in the judgment of T. C. Du Pont upon operating for one year, the plant was worth $175,000 to his company and was capable of making double tape fuse at $2 per thousand feet with powder at $3.60 a keg. This was to be additional compensation for additional value, so that the objection of the statute of frauds is unavailing.

[2] The letter does not contain any express promise to operate the plant for one year, and the question is whether such a promise is to be implied. We think the court below rightly held that it was. The seller evidently thought the plant worth $175,000 in the defendant's securities, and the buyer was willing to pay the additional $25,000 if such value was demonstrated in the way provided. The letter implies a

promise on the Du Pont Company's part to operate the plant for a year, and that promise must be taken as part of the consideration for which Grubb sold the capital stock. The authorities support this conclusion. Allen, J., said in Booth v. Cleveland Mill Co., 74 N. Y. 15, 21:

"There is no particular formula of words, or technical phraseology, necessary to the creation of an express obligation to do, or forbear to do, a particular thing or perform a specified act. If, from the text of an agreement, and the language of the parties, either in the body of the instrument, or in the recital or references, there is manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for nonperformance of which an action of covenant or assumpsit will lie. It is a cardinal principle that every agreement or covenant must be interpreted according to its peculiar terms, and so as to carry out the intent of the parties, and it follows that the ruling upon, and the interpretation of, one agreement will seldom aid in the construction of another, except as it may illustrate some general rule of interpretation applicable to both."

See, also, 9 Cyc. 639; Telegraph Co. v. McLean, 8 Ch. App. 658; Horton v. Clark, 94 App. Div. 404, 88 N. Y. Supp. 73; Hearn v. Stevens, 111 App. Div. 101, 97 N. Y. Supp. 566; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Wilson v. Orguinette Co., 170 N. Y. 542, 63 N. E. 550; Pritchard v. McLeod, 205 Fed. 24, 123 C. C. A. 332.

[3] The question of damages is the only other question we think needing consideration. If the plaintiff could now perform or secure a performance of the agreed test, he might be obliged to do so as a condition of recovering the contract price. But the defendant has made performance impossible by selling the plant within the period of one year to a purchaser who has dismantled it. No similar test can be substituted. It was personal in its nature, viz., the operation for a year by a wealthy and expert corporation actuated by self-interest to make tape fuse at $2 a thousand feet. Because the defendant has made the performance of this test impossible, the plaintiff should not be remediless. We think he had the right to show, if he could, in other ways, that the value of the plant was greater by $25,000 than the sum paid for it. As Judge Bartlett said in Hopedale Co. v. Electric Storage Battery Co., 184 N. Y. 356, 364, 77 N. E. 394, 397:

"In other words, the performance of a condition for valuation having been prevented by the act of the vendee, the price of the thing sold was to be fixed by the jury on a quantum valebat."

[4] Though the contract contemplated that the defendant should pay the additional amount in its own securities, having refused to pay at all, the plaintiff has a right to recover money. New York Publishing Co. v. Steamship Co., 148 N. Y. 39, 42 N. E. 514. One witness stated that the plant was worth $175,000, and the Du Pont Company actually sold it for $150,000. The plaintiff's assignor received $122,000, the market value of the defendant's securities, aggregating $150,000. Therefore there was evidence to support the finding of the trial judge that the plant was worth $147,000, which may be implied from his direction of a verdict for $25,000.

Judgment affirmed.