## DIAMOND ALKALI CO. v. P. C. THOMSON & CO., Inc.

District Court, E. D. Pennsylvania. January 10, 1928.

### No. 4231.

Injunction ⟨⟩61(1)—Contract to buy from complainant for five years held not to require defendant to continue business, so that injunction against its sale was not authorized.

Defendant, operating a manufacturing plant, entered into a contract with complainant by which it agreed to buy all its raw material from complainant for a term of five years, and complainant agreed to furnish such material. *Held*, that the contract did not obligate defendant to continue in business for five years, and that on sale of its plant and good will complainant could not maintain suit in equity for an injunction to require defendant to rescind the sale.

In Equity. Suit by the Diamond Alkali Company against P. C. Thomson & Co., Inc. Decree for defendant.

William Clarke Mason, of Philadelphia, Pa., for plaintiff.

John A. Brown and Theodore F. Jenkins, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached is that the bill should be dismissed, for want of equity, with costs to defendant.

### Discussion.

The hearing of this cause began as a motion for a preliminary injunction, but was expanded by stipulation into one on trial hearing on final decree. The parties entered into an agreement under date of November 25, 1925. The defendant had been maintaining in Philadelphia a manufacturing plant, supplies for which it was the business of the plaintiff to furnish. One feature of the agreement was that the defendant was to

remove its plant to Fairport, near Alkali, Ohio, where the plaintiff had a plant. The defendant was further to buy all its supplies from the plaintiff during the term of five years. The defendant bought of the plaintiff a tract of land at Fairport and erected thereon a building, but no operations were there carried on. The defendant then sold out its Philadelphia plant and the good will of the business, with an agreement not itself to engage within a limited area or for a limited time. The effect follows that it will have no use for supplies, and the plaintiff will lose a customer with whom it had the expectation of doing a valuable trade.

The pertinent prayer now is that the defendant tender to the purchaser of its Philadelphia plant the return of the purchase money received and the cancellation of the agreement of purchase. The purchaser is not a party to this bill, so that no decree made would reach him. All we could do would be to make a decree against the defendant, saving the rights of third persons, in the spirit of equity rule 39; the finding being made that the purchaser is an absent party, who cannot be served because out of the jurisdiction of the court. The rights of the plaintiff, in the sense of a cause of action, are founded wholly upon the agreement which enters into this bill. In any agreement a party may rely upon the obligation of the other party or of a surety, or may rely upon the creation of a situation which is a fact assurance that the agreement will be kept. The sole inducement to the making of this contract was the expectation that the defendant would continue in the business, thus assuring to the plaintiff the profits of the supply of raw materials needed by the defendant.

The defendant having gone out of business, and thus needing no supplies, the plaintiff is disappointed of its expectation of profits. It asked, or at least received, no covenant from the defendant, and hence holds no obligation upon which it can rely. Its reliance was wholly upon the assurance that the situation created would induce the defendant to keep in a business in which by reason of the agreement they had made a very substantial investment. In the absence of any agreement to continue in business, the problem is to find a way to compel them by law not to go out of business. It is true, of course, that the plaintiff was bound to supply the defendant with raw materials for five years. This, however, was because, and solely because, it had so agreed, and would seem to carry as a corollary that the defend-

ant was not bound to do what it had not agreed to do.

The resourceful counsel for plaintiff meets this by construing this agreement as one of the defendant to continue in business for five years and buy its supplies from the plaintiff during this term. The whole question thus seems to resolve itself into the one of whether the agreement can be so read. The answer we feel compelled to make is that we cannot so read it. That there may be an agreement in which an undertaking not express is imputed to a party because of other undertakings, which are expressed, is undoubted. Many illustrations of this can be found in the decided cases. The instant case is, however, not of this type. In an agreement which on its face purports to express all the things which a party agrees to do, there is no room left to interpolate another agreement, not expressed. In illustration, there is the agreement here that the defendant shall neither mortgage nor in any manner pledge its assets without the consent of the plaintiff. Why was not a sale included, if contemplated?

Moreover, the doctrine of implied contracts is built upon the finding that, if the parties had expressed what was in mind to be done or not done, they would have expressed what is sought to be implied. Here there can be no such finding. How can it be found that the defendant had in mind and may be assumed to have agreed to continue a losing business for a term of five years or to forego an advantageous sale?

It is further to be kept in mind that this is a proceeding in equity. Even in the case of an express contract to make definite purchases of supplies during a term of years, the damages flowing from a breach would be limited to the lost profits on the lost sales. The equitable remedy of an enforced continuance of a losing business might entail untold loss, of which the lost profits would be a small part. There is a duty growing out of relations, the fulfillment of which may be enforced with only a secondary consideratin of pecuniary consequences; but, where the duty springs wholly out of a contractual relation (unless the situation created is unusual), money damages are of the first consideration, and when they can be awarded are a full compensation for the lost contract.

McKeever v. Iron Co., 138 Pa. 184, 16 A. 97, 20 A. 938, was an action in assumpsit, with all the equitable considerations before the court which enter into such a form of action under the Pennsylvania practice. This it seems to us lays down the true doctrine.

We do not attach the meaning to the quoted expression from the opinion in the Loudenback Case (C. C. A.) 121 F. at page 304, 61 L. R. A. 402, which counsel for plaintiff gets out of it. To begin with, we see no conflict between the two rulings. The McKeever Case had been cited, however, in support of a different doctrine. The full import of the case could not be known without going back of the report of it. What was said of it was that it was not authoritative, which was true, and that it was a case ruled without the reasons for the ruling being stated. This was likewise true, because the opinion was a mere per curiam, preceded by a former opinion of Gordon, C. J., which in turn was limited to a statement of the conclusion which the court had reached. When the fact situation to which the ruling applied is developed, it is found to be an agreement by the then defendant to purchase all the coal required for its mill purposes of the plaintiff at named prices for different grades of coal, a change at the mill of defendant to the use of natural gas, which greatly reduced the quantity of coal required, and an attempt by the defendant to get away from its contract to purchase the coal which it did use by changing the name of the coal which it did use from "slack" to "nut." The ruling was that the plaintiff could not prevent the defendant from using gas (which had come into use since the agreement) by compelling it to use only coal; but the defendant could not escape its obligation to buy of the plaintiff the coal which was used, by merely calling it by a different name from that used in the contract.

As before stated, we see nothing wrong with the doctrine laid down, nor anything which is in conflict with that of the Loudenback Case. This was likewise a case in assumpsit, and was ruled upon a demurrer. The plaintiff (in the action) averred as its cause of action that the defendant had breached its contract to supply rock at a named price. The statement of claim, however, disclosed that the plaintiff had itself breached the contract sued upon, and that the real attempt it was making was to buy its rock elsewhere when the price fell below the contract price, and to compel the defendant to supply it with rock at the contract price only when the market price was higher. The ruling was that it should not receive the assistance of the court in this attempt. Surely no one would find fault with either of these rulings. The one fully supports the defendant here, and the other is of no help to the plaintiff.

The case of Du Pont v. Schlottman (C. C. A.) 218 F. 353, is likewise a case wholly different from the instant case. There the contract was based upon negotiations for the purchase of a fuse company. The contract was that, if what had been bought was shown by a year's operation to be worth more to the purchaser than the price proposed to be paid, the purchaser would pay an additional $25,000. The test of value was to be the output product during a year of fuses at a certain cost, based upon supply materials at a certain price. The defendant, on the faith of this contract, bought the fuse company at its own price and then dismantled it. The court held that the defendant could not by its own act make the meeting of the test impossible, and then deny the plaintiff the reward to which he was entitled because he had not met the test. We see no analogy between the cited case and the instant one.

The case upon which the main reliance of the plaintiff is placed is that of Great Lakes & St. Lawrence Transp. Co. v. Scranton Coal Co. (C. C. A.) 239 F. 603. This case is more nearly in point. It was (as is this) heard in equity, and the relief prayed was to enjoin the sale of the defendant's boats, by which it would have been put out of business. The conditions, however, were unusual. It was in war time, and the consequence to the plaintiff of the failure of the defendant to perform what was found to be its contract was to disrupt the whole business of the plaintiff. There was an express contract on the part of the defendant to carry on its west-bound trips for the time specified, but no express contract otherwise to continue to run its ships, or to put them on voyages which would touch the shipping port of the plaintiff. There were, however, specific express provisions for interruption of voyages because of loss of ships, perils of the sea, strikes, etc., during which interruptions the obligation to carry was suspended. In addition to this, the service to be rendered had been rendered in the past, and this experience came unavoidably to influence the interpretation of the contract. The court held the contract to mean that the defendant would render the prescribed service during the time designated, and to this end would not be permitted to disable itself from performance by selling its ships.

The value of the ruling as a guide in the case of other contracts is very well expressed in the accompanying opinion. Every contract is the found expression of what the parties meant to express. In the cited case the defendant, lured by the promise of war prices, was yielding to the temptation to get big money without giving consideration

to the consequences of its breach of its contracts upon others, and the contract was found to be what the parties clearly meant to have expressed.

In the instant case, as before stated, we cannot find that the defendant or the plaintiff either meant to contract as we are now asked to hold that they did contract. On the contrary, our finding is that the plaintiff did not ask for such a contract but placed its reliance upon the expectation that it had created a situation such that it would always be to the interest of the defendant to hold to its business relations with the plaintiff, and such a situation is often more dependable than any promise.

A form of decree dismissing the bill, with costs, for want of equity, may be submitted.